UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK HIMES,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>FABRICE HADJADJ,<br><br>　　　　　　　　　　　Defendant. | Case No.:  19cv2216-JAH-MSB<br><br>**REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS [ECF NO. 8]** |

This Report and Recommendation is submitted to the Honorable John A. Houston, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  On November 21, 2019, Plaintiff Roderick Himes, a prisoner[1] incarcerated at R. J. Donovan State Prison ("Donovan") proceeding pro se and in forma pauperis, filed a complaint (the "Complaint") pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983, alleging that Defendant Fabrice Hadjadj, a Jewish chaplain at Donovan, violated his First Amendment right to free exercise of his religion and his Fourteenth Amendment rights to equal

---

[1] While Mr. Himes was a prisoner at the time he filed the Complaint, it appears that he has subsequently been released on parole.  (See Not. of Address Change, ECF No. 13 (informing the Court that Plaintiff paroled on August 1, 2020).)

1

protection and due process by blocking his participation in the inmate Kosher Diet Program ("KDP") and improperly processing and evaluating a number of documents related to his removal from the program. (Compl., ECF No. 1.)

Now pending before the Court is Defendant's motion to dismiss the Complaint for failure to state a claim. (Def.'s Mot. to Dismiss, ECF No. 8.) For the reasons set forth below, the Court **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** and the Complaint be dismissed in its entirety.

## I.   BACKGROUND[2]

At the time of the events underlying the Complaint, Plaintiff was incarcerated at Donovan after being transferred there from another institution on February 8, 2019. (ECF No. 1 at 4.) Plaintiff alleges that Defendant, as the supervisor of Jewish religious services at Donovan, blocked Plaintiff from participating in the KDP in violation of his First Amendment right to free exercise of his religion because Plaintiff is African American. (See id. at 4-5.) Additionally, Plaintiff alleges that Defendant deprived him of due process by failing to provide Plaintiff with an opportunity to object to the finding of a KDP violation on January 11, 2019, which resulted in his removal from the program. (See id. at 5.) Plaintiff maintains that the January 11 violation "never occurred," and that Defendant and other prison staff covered up procedural errors in the grievance process and relied on false information contained in Plaintiff's central prison file to

---

[2] In recounting the events that led to the instant § 1983 action, the Court draws from allegations taken from the Complaint and various California Department of Corrections and Rehabilitation ("CDCR") administrative forms regarding Plaintiff's participation in the KDP at Donovan, which Plaintiff attaches as exhibits. (See ECF No. 1.) Unless otherwise noted, these documents are accepted as true for the purposes of evaluating the instant motion to dismiss. See Vasquez v, L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007) (noting that courts must "accept all material allegations of fact as true"); see also Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000) (courts "may consider facts contained in documents attached to the complaint" in determining whether the complaint states a claim for relief).

exclude him from the KDP upon his arrival at Donovan. (Pl.'s Opp. to Def.'s Mot. to Dismiss, ECF No. 11 at 6; see also ECF No. 1 at 6.)

### A. Plaintiff's Participation in the KDP before Donovan

Before his transfer to Donovan, Plaintiff was incarcerated at several other facilities within the California Department of Corrections and Rehabilitation ("CDCR"), and because of his observance of the Jewish religion, was a KDP participant for approximately ten years. (ECF No. 1 at 6.) The KDP allows members of the Jewish faith to receive specialized kosher meals that conform to religious dietary requirements. (See id. at 21.) Participation in the KDP is tracked through a centralized Inmate Meal Tracking System ("IMTS"), and requires inmates to exclusively purchase and consume foods that comply with kosher dietary restrictions. (See id.) When a KDP participant is found to have purchased or consumed food from a prison that is not in compliance with kosher dietary restrictions, these violations are recorded in the IMTS and can result in disciplinary action; namely, two subsequent violations of the KDP within a six-month period can result in a participant's removal from the program for six months. (See id.)

While incarcerated at another institution before his transfer to Donovan, Plaintiff was found in violation of the KDP on November 7, 2018 for purchasing non-kosher food items, including chili, pork rinds, and oysters from the prison's commissary. (See id. at 18; see also ECF No. 11 at 4 (in which Plaintiff concedes to this first violation).) A second violation of the KDP by Plaintiff appears to have been recorded on January 11, 2019, and Plaintiff was removed from the program on January 29, 2019. (See id. at 15.) Plaintiff maintains that this second violation "never . . . occurred." (See id. at 6.)

### B. Plaintiff's Arrival at Donovan

After his arrival on February 8, 2019, Plaintiff was unable to receive KDP meals from food service personnel at Donovan and filed two CDCR Form 22 requests to be added to the kosher diet list. (See ECF No. 1 at 4, 16, 12.) The first of these Form 22 requests, submitted on March 13, 2019, notes that Plaintiff's request was forwarded to a "Rabbi," but does not include any notations in the "Staff Response" section. (See id. at

16.) Plaintiff then filed a second Form 22 request on March 21, 2019, largely echoing the same issues. (See id. at 12.) Defendant's April 1, 2019 response stated: "According to the IMTS you are receiving your meals since [January 29, 2019]. Please address your concern with food services." (See id. at 4, 12.)

**C.   Plaintiff's Grievance**

Evidently still unable to receive kosher meals, Plaintiff proceeded to file a Form 602 grievance asking to be added to the kosher diet list. (See id. at 25, 27.) This grievance, submitted April 9, 2019, references Plaintiff's Form 22 requests, and alleges that Defendant ignored his requests to be added to the kosher diet list. (See id. at 27.) The first level response to Plaintiff's grievance, dated May 8, 2019 and signed by N. Tuason, a community resource manager at Donovan, indicates that Plaintiff was not receiving kosher meals from food services because the IMTS showed that prior to his transfer to Donovan, Plaintiff had been found in violation of the KDP a second time on January 11, 2019 and subsequently removed from the program on January 29, 2019. (See id. at 15.) The grievance noted that Plaintiff would be eligible for reinstatement in the KDP on July 29, 2019, six months following the date he had been removed from the program. (See id.)

The first level response also indicates that Plaintiff participated in an interview with Defendant on April 25, 2019 in connection with the appeal. (See id. at 14.) A screenshot of the IMTS form attached to the first level response appears to indicate that the Jewish chaplain at Plaintiff's previous institution, Joel Youngheim, made modifications to the IMTS tracking form on July 9, 2018, January 11, 2019, and January 29, 2019. (See id. at 17.) This screenshot also appears to indicate that Defendant reviewed the IMTS tracking sheet on April 30, 2019. (See id.) A screenshot of Plaintiff's food purchase history, also attached to the first level response, is consistent with Plaintiff's first KDP violation on November 7, 2018. (See id. at 18.)

Plaintiff appealed the first level response to his grievance. (See id. at 26, 28.) Plaintiff noted that no one provided him with a Form 3030-C (a form given to inmates

4

notifying them of their removal from a religious diet program under the California Code of Regulations governing the CDCR) or any documented evidence of the January 11, 2019 second KDP violation. (See id.) Plaintiff asserts that Joel Youngheim, the Jewish chaplain at his previous institution, erroneously removed him from the KDP on January 29, 2019. (See id. at 28.) Although not entirely clear, Plaintiff appears to contend that Joel Youngheim's removal of Plaintiff from the KDP without the approval of the Religious Review Committee ("RRC"), violated the California Code of Regulations governing inmate religious diet programs. (See id. ("I context the error by Joel Youngheim, removed me, from the Kosher Diet Program on [January 29, 2019] . . . The RRC shall make the final determination of continuing eligibility . . . not Joel Youngheim.").)

The grievance was evaluated at the second level of appeal by Patrick Covello, a warden at Donovan, who again determined that Plaintiff was ineligible for KDP participation but would be eligible for reinstatement on July 29, 2019. (See id. at 20-21.) Plaintiff appealed to the third level, contending: (1) that the second level review staff had removed the first level response form and replaced it with a form that did not include the location of his interview with Defendant in connection with the appeal, (2) that the "reviewing staff" had not addressed the notice issue that he mentioned in his response to the first level grievance decision, and (3) that the RRC had not followed the correct procedures in removing him from the KDP. (See id. at 26, 28.) The third level of review by Appeals Examiner K. J. Allen affirmed Plaintiff's six-month suspension from the program, noting that Plaintiff would be eligible for reinstatement in the KDP on July 29, 2019. (See id. at 23-24.)

## II.     LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In evaluating whether dismissal is appropriate, a court must accept all allegations of factual material pleaded in the complaint as true. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Additionally, a court

must construe allegations and draw all reasonable inferences from them in favor of the nonmoving party. Id.  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, but rather must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556); Sommers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (alteration in original)).  Additionally, a court need not accept mere legal conclusions as true. Iqbal, 556 U.S. at 678 (internal citation and quotes omitted); accord Johnson v. Fed. Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Although this entitles a plaintiff's allegations to deference, it is nonetheless improper for a court to assume that the plaintiff "can prove facts that [he] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) (internal quotations omitted).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences

6

[drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

Because Rule 12(b)(6) focuses on the sufficiency of a claim rather than its substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss," Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002), including the exhibits attached to it. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc., 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss).), abrogated in part on other grounds by Iqbal, 556 U.S. at 670; Twombly, 550 U.S. at 562-63. Exhibits that contradict the claims in a complaint, however, may fatally undermine the complaint's allegations. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims") (citing Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998)) (courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint")).

Generally, courts freely grant leave to amend a complaint that has been dismissed. See Fed. R. Civ. P. 15(a); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib., 806 F.2d at 1401 (citing Bonanno v. Thomas, 309 F.2d 320, 322 (9th Cir. 1962)). Additionally, when a court dismisses a pro se litigant's complaint, the court must provide the plaintiff with a statement of the complaint's deficiencies to avoid repeated errors. Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623-24 (9th Cir. 1988) (overruled on other grounds).

### III.   DISCUSSION

Given liberal interpretation, the Complaint alleges (1) that Defendant blocked Plaintiff's participation in the KDP in violation of the free exercise clause of the First Amendment; (2) that Defendant violated Plaintiff's right to due process by failing to provide Plaintiff the opportunity to contest or review documentation of the second KDP violation on January 11, 2019, which Plaintiff maintains never happened; and (3) that Defendant blocked his access to KDP meals because Plaintiff is African American, a violation of Plaintiff's right to equal protection under the Fourteenth Amendment.  (See ECF No. 1 at 5-6.)  Defendant contends in his motion to dismiss that Plaintiff fails to state a cognizable claim against him because (1) the Complaint does not allege that Defendant held any hearings or made any determinations as to Plaintiff's participation in the KDP at Donovan, and (2) even if Defendant was responsible for providing Plaintiff with notice of the second violation, failure to comply with the California Code of Regulations does not equate to a constitutional violation.  (ECF No. 8 at 5-6.)  Each of these arguments are addressed in turn.

A.   **Section 1983 Standard**

Individuals may bring a civil rights action pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  To properly plead a § 1983 violation, a plaintiff must allege facts from which it may be inferred that (1) a constitutional right was deprived, and (2) a person who committed the alleged violation acted under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege that a specific injury was suffered and show a causal relationship between the defendant's conduct and the injury. See Rizzo v. Goode, 423 U.S. 362, 371-72 (1976). Thus, § 1983 requires that there be an actual connection or link between the actions of a defendant and the alleged deprivation of constitutional rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (noting that a prisoner must set forth facts as to each defendant's wrongdoing); Chavira v. Ruth, No. 1:11–cv–01718–MJS (PC), 2012 WL 1328636, at *2 (E.D. Cal. Apr. 17, 2012) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)) ("[§ 1983] requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff"). A state actor deprives an individual of a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which the complaint is made." Johnson v. Duffy, 558 F.2d 740, 743 (9th Cir. 1978) (citing Sims v. Adams, 537 F.2d 829 (5th Cir. 1976)). Under § 1983, government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. See Iqbal, 556 U.S. at 676 (internal quotations omitted). Since vicarious liability is unavailable, a plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions. See id. A supervisor can only be liable for constitutional violations of his subordinates if the supervisor participated in, directed, or knew of the violations and failed to act to prevent them. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). In other words, a supervisor may be liable under § 1983 only if (1) he or she is personally involved in the constitutional deprivation, or (2) sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation. See Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001).

**B.   First Amendment Claim**

Plaintiff's main contention in the Complaint is that Defendant deprived him of his First Amendment right to free exercise of his Jewish faith by blocking his participation in the KDP at Donovan. (See, e.g., ECF No. 1 at 5.) Inmates retain the protections afforded

to them by the First Amendment, including the free exercise of their religion, while incarcerated.  See McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)).  Free exercise rights, however, are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security."  Id.  The protections of the free exercise clause of the First Amendment are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct that he sincerely believes is mandated by his faith.  Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).  The Ninth Circuit has held that inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion."  Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993) (internal citation omitted).  Consequently, if an inmate is denied accommodation for his diet, First Amendment violations may be implicated.  See Porter v. Wegman, No. 1:10cv01500 LJO DLB (PC), 2013 WL 3863925, at *2 (E.D. Cal. July 24, 2013), report and recommendation adopted by No. 1:10cv01500 LJO DLB (PC), 2013 WL 4815435 (E.D. Cal. Sept. 6, 2013).

Taking the allegations in the Complaint as true, Plaintiff has pointed to two distinct acts that resulted in his exclusion from the KDP by prison officials:  (1) the alleged fabrication of a second KDP violation on January 11, 2019, leading to his removal from the program on January 29, 2019, and (2) the denial of Plaintiff's Form 602 grievance filed on April 9, 2019.  (See ECF No. 1 at 25, 28.)  Plaintiff has failed to allege, however, that Defendant was involved either in his removal from the KDP on January 29, 2019, or in the decision to maintain Plaintiff's suspension from the KDP after his arrival at Donovan.

As an initial matter, Plaintiff has not alleged that Defendant was involved at all in the second KDP violation decision on January 11, 2019, or Plaintiff's subsequent removal from the KDP on January 29, 2019.  (See id. (lacking allegations of a connection between Defendant's actions and Plaintiff's removal from the KDP).)  Referencing the Form 602

documents attached to the Complaint, Defendant contends that the removal decisions occurred before Plaintiff arrived at Donovan on February 8, 2019. (See ECF No. 8 at 5 ("Plaintiff was removed from the [KDP] participant list before he even arrived at Donovan . . .").) Indeed, Plaintiff appears to concede in the response to the first level decision on his Form 602 grievance that Joel Youngheim, a Jewish chaplain at his previous institution, removed him from the KDP participation list erroneously. (See ECF No. 1 at 28 (contending that Joel Youngheim removed Plaintiff from the KDP on January 29, 2019 in error).) Plaintiff alleges that he never received any notice of the second violation or of his subsequent removal from the KDP on January 29, 2019, and that the RRC failed to review Joel Youngheim's decision to remove Plaintiff from the KDP. (See id. at 5-6, 28.) The Complaint contains no allegations, however, that Defendant was involved in Chaplain Youngheim's imposition of suspension, was part of the RRC that would have reviewed Chaplain Youngheim's suspension decision, or that Defendant made any determinations on behalf of the RRC at Donovan or any other institution. Plaintiff has failed to allege that any of Defendant's actions caused Plaintiff's removal from the KDP program. See Johnson, 558 F.2d at 743 (requiring affirmative acts on the part of a defendant in participating in constitutional violations).

Nor has Plaintiff alleged that Defendant rejected or even authorized the rejection of Plaintiff's requests to be added to the KDP after his arrival at Donovan. Plaintiff contends that after he made two Form 22 requests to be added to the KDP, Defendant improperly relied on Joel Youngheim's allegedly fabricated removal decision to deny Plaintiff access to the KDP at Donovan, despite the lack of evidence of a second violation in Plaintiff's CDCR central file. (See ECF No. 1 at 26, 28; ECF No. 11 at 4.) Apart from conclusory allegations that Defendant blocked or denied Plaintiff's entry into the KDP upon his arrival at Donovan, however, Plaintiff has not alleged any direct action on Defendant's part that resulted in his exclusion from the KDP. The Complaint and attached grievance documents show that Defendant did not deny Plaintiff's Form 602 grievance requesting to be added to the KDP at any of the three levels of review; these

decisions were made by the reviewing staff at each level. (See ECF No. 1 at 14-29.) Defendant's only related actions, according to the Complaint, are that he responded to a Form 22 request on March 31, 2019, participated in an interview with Plaintiff in connection with Plaintiff's Form 602 grievance on April 25, 2019, and logged into Plaintiff's IMTS file on April 30, 2019.  (See ECF No. 1 at 12, 14.)  These allegations, without a specific causal link to the denial of Plaintiff's participation in the KDP, fail to state claim for relief.

In his opposition, Plaintiff cites to cases within the Ninth Circuit which have noted that supervisors can be held liable for constitutional violations of their subordinates if they are aware of such conduct and fail to correct it.  (See ECF No. 11 at 5 (citing Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012)).)  Plaintiff contends that because Defendant, the supervisor of the KDP program at Donovan, had access to Plaintiff's CDCR central file lacking any evidence of a second KDP violation, Defendant should have done something to correct the problem or contacted Joel Youngheim to determine whether a violation had occurred.  (See ECF No. 11 at 6 ("If Defendant was unaware or not certain of the second violation of January 11, 2019 Defendant should . . . [have] email[ed] [Joel Youngheim] for clarification").)  These arguments, however, do not cure the lack of a causal connection between Defendant's actions and Plaintiff's exclusion from the KDP noted above.  Plaintiff's repeated assertions that Defendant was the supervisor of the KDP program at Donovan are not enough to plausibly allege that Defendant participated in or had supervisory authority over the decision at his prior institution to suspend Plaintiff from participation in the KDP, and the Court is not permitted to assume that such a connection exists.  See Associated Gen. Contractors of Cal., 459 U.S. at 526 (noting that it is improper for a court to assume that "the plaintiff can prove facts that he has not alleged or that defendants have violated . . . the laws in ways that have not been alleged.")  Accordingly, the Complaint fails to state a claim against Defendant with respect to Plaintiff's First Amendment allegations, and the Court **RECOMMENDS** that these claims be **DISMISSED** with leave to amend.

### C. Fourteenth Amendment Due Process Claims

In addition to the labeled cause of action for violation of the free exercise clause of the First Amendment, the Complaint alleges that Defendant violated Plaintiff's right to procedural due process under the Fourteenth Amendment at various points related to his exclusion from the KDP at Donovan.[3] (ECF No. 1 at 5.) First, Plaintiff contends that Defendant and "the RRC" failed to provide him with any notice or consultation related to the second KDP violation on January 11, 2019—a violation of California Code of Regulations ("CCR"), Title 15, § 3054.5.[4] (ECF No. 1 at 5-6; ECF No. 11 at 3-4 ("The . . . [RRC] only provided plaintiff with notice of the first violation, not the second, thus violating plaintiff's procedural due process rights.").) Additionally, Plaintiff appears to contend that Defendant did not provide him with adequate opportunities to contest the second KDP violation during the evaluation of his Form 602 grievance objecting to his exclusion from the KDP—an additional violation of his right to due process under the Fourteenth Amendment. (See Id.) Plaintiff avers that Defendant did not provide him with an adequate opportunity to present an appropriate defense at the interview in

---

[3] Plaintiff's due process allegations, though not labeled as a separate cause of action, are embedded at multiple points within First Amendment free exercise violation allegations in the Complaint. Because Plaintiff has presented arguments in the Complaint and his opposition to Defendant's motion to dismiss as to why the due process clause of the Fourteenth Amendment was implicated in his exclusion from the KDP, the Court will construe Plaintiff's pleadings liberally and proceed to address the due process arguments as if they were a discrete cause of action listed in the Complaint. See Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (quoting Erickson v. Pardus, 551 U.S. 89, 94, (2007) (internal quotation marks omitted) (pro se complaints "must be held to less stringent standards than formal pleadings drafted by lawyers")).

[4] Section 3045.5 of CCR Title 15 provides in relevant part:
>  The RRC shall make the final determination of continuing eligibility, and complete a CDCR Form 3030-C (Rev. 04/16), Religious Diet Program Notice of Non-Compliance, which is incorporated by reference. As described on the CDCR Form 3030-C, a first violation of the Religious Diet Program Agreement shall result in a warning issued to the inmate, and a second violation within six months of the first violation may subject the inmate to removal from the program. A copy of the completed CDCR Form 3030-C shall be provided to the inmate.

Cal. Code. Regs. tit. 15 § 3045.5. Plaintiff emphasizes that the RRC "shall" provide a copy of a Form 3030-C to the inmate. (See ECF No. 11 at 2.)

connection with his appeal, (see ECF No. 11 at 3 ("No hearing [was] given to plaintiff for the opportunity to context the unreliable evidence that was used against plaintiff or produced in the appeal process regarding the second [KDP] violation of January 11, 2019 . . .")), and that Defendant and other prison staff obscured the details of the interview and evidence used in connection with the findings at each level of the grievance's appeal at Donovan. (See id. at 4-6; ECF No. 1 at 26, 28.)

To the extent Plaintiff alleges that Defendant and "the RRC" violated his right to procedural due process by failing to comply with the CCR related to inmate religious diet programs, the Complaint fails to state a claim for two reasons. First, the Complaint does not state a cognizable due process claim by pleading a violation of CCR Title 15 § 3045.5. Violations of state regulations generally do not amount to procedural due process violations under the Fourteenth Amendment in § 1983 actions. See Sweaney v. Ada Cnty., 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996) (internal quotations omitted) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [§] 1983 offers no redress."). Plaintiff argues that state statutes and regulations can, in some circumstances, create liberty interests protected by the Fourteenth Amendment and afford a cause of action to prisoners under § 1983. (See ECF No. 11 at 2-3.) While it is true that the Ninth Circuit has recognized that Fourteenth Amendment protection can extend to state prison regulations, this determination rests on whether a violation of the regulation imposes "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" and is generally confined to regulations that relate to freedom from restraint. Chappell v. Mandeville, 706 F.3d 1052, 1064 (9th Cir. 2013) (Graham, J., concurring) (quoting Sandin v. Connor, 515 U.S. 472, 484 (1995)). The Court's review of federal and state precedent allowing Fourteenth Amendment due process claims to proceed on the basis of CCR violations has uncovered no reported decisions finding that an independent cause of action is authorized by violations of CCR

Title 15 § 3045.5, or any similar regulations.  See, e.g., Garcia v. L.A. Cnty. Sheriff Dep't, No. CV1508239DOCDFM, 2017 WL 275597, at *6 (C.D. Cal. Jan. 19, 2017) (citing Sweaney, 119 F.3d at 1391 ("Section 1983 offers no redress for a violation of a state law or state mandated procedure that does not amount to a constitutional violation.")). Additionally, Plaintiff has offered no explanation as to why the narrow exceptions to the general rule that Fourteenth Amendment protections do not extend to violations of state regulations recognized by the Ninth Circuit should apply here.  Thus, the Complaint fails to explain why Fourteenth Amendment due process protections should extend to violations of the inmate religious diet provisions of the CCR.

Second, even if the Court assumes arguendo that a violation of CCR Title 15 § 3045.5 could create a right of action under § 1983, for the same reasons Plaintiff has not alleged that Defendant caused a First Amendment violation, the Complaint fails to state a Fourteenth Amendment due process violation.  Specifically, the pleadings do not explain how Defendant was involved in the failure to provide Plaintiff with any notice of the second KDP violation, as that determination and Plaintiff's subsequent removal from the KDP occurred on January 11, 2019 and January 29, 2019 respectively, before Plaintiff arrived at Donovan.  See Castle v. Lugo, No. CV 18-08827-JVS (JDE), 2019 WL 8198271, at *12 (C.D. Cal. Nov. 26, 2019) (dismissing due process claims against an individual defendant when the plaintiff failed to allege how defendant was involved in the due process violations at a specific disciplinary hearing), report and recommendation adopted by No. 2:18-CV-08827-JVS (JDE), 2019 WL 8198234 (C.D. Cal. Dec. 20, 2019). Because Plaintiff has failed to establish that due process protections under the Fourteenth Amendment extend to violations of the CCR's inmate religious diet provisions, or that Defendant was involved at all in the alleged violation, the Complaint fails to state a due process claim against Defendant for failing to provide notice of the second KDP violation.

To the extent Plaintiff alleges Defendant violated his Fourteenth Amendment due process rights during the grievance process, the Complaint also fails to state a valid

claim for relief.  Although it does not specifically address Defendant's actions in evaluating Plaintiff's grievance, the Complaint alleges that Defendant violated CDCR regulations by blocking Plaintiff's ability to contest the January 11, 2019 second KDP violation at Donovan.  (See ECF No. 1 at 5.)  Additionally, in opposition to Defendant's contention that prisoners do not have a state-created liberty interest in prison officials' adherence to CDCR regulations, Plaintiff avers that Defendant failed to provide evidence of the second KDP violation during the first level interview in the evaluation of his Form 602 grievance, and that Defendant and other reviewing staff obscured the details of his participation in the interview in the responses to his appeals, including the evidence used to deny him participation in the KDP at each level. (See ECF No. 11 at 3-6.)  These actions, Plaintiff argues, blocked his ability to present a meaningful defense during the grievance process, resulting in due process violations under the Fourteenth Amendment.  (See ECF No. 11 at 4-5.)

      Under Rule 7(a), Plaintiff's Opposition to the Motion to Dismiss does not constitute pleadings, and therefore allegations first raised in the Opposition are not considered when resolving the Motion to Dismiss.  See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1014 (9th Cir. 2018).  Nevertheless, to the extent that the Opposition contains argument explaining the allegations in the Complaint, the Court will address them.  See Hebbe, 627 F.3d at 342 (citing Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)) (the court must "construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt.").

      While violations of CDCR regulations may in some cases result in due process violations, inmates do not maintain a constitutional right to an effective grievance or appeal procedure.  See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)) ("inmates lack a separate constitutional entitlement to a specific prison grievance procedure.").  Plaintiff's contentions that Defendant and other appeals staff failed to provide him with the evidence used to make the grievance determination, deleted details of where the interview took place, and

removed the first level response form to cover up procedural errors in the review process do not amount to "atypical or significant" hardship in relation to the "ordinary incidents of prison life" contemplated by the Ninth Circuit's analysis of <u>Sandin</u> such that Fourteenth Amendment protections are implicated.  See <u>Loring v. Daly</u>, No. CV 19-05133-PHX-JAT (JFM), 2020 WL 3064498, at *5 (D. Ariz. June 9, 2020) (citing <u>Sandin</u>, 515 U.S. at 484; <u>Ramirez</u>, 334 F.3d at 860) (dismissing due process claims when an inmate alleged that prison staff "added things" to an appeal to cover up procedural deficiencies).  As against Defendant, Plaintiff has failed to allege due process violations during the evaluation and processing of his grievance.

Because the Complaint fails to state Fourteenth Amendment due process claims, the Court **RECOMMENDS** that the claims be **DISMISSED**.  Although the Court has doubts that further amendment can cure the claims' deficiencies, as it is not "absolutely clear" that further amendment would be futile, dismissal should be with leave to amend.

D. **Fourteenth Amendment Equal Protection Claim**

Additionally, Plaintiff appears to allege that his equal protection rights were violated by Defendant's decision to exclude him from the KDP because Plaintiff is African American.[5]  (ECF No. 1 at 5 (contending that Defendant "denied [P]laintiff the right to practice his [J]ewish faith based on racial discrimination in that [P]laintiff is African American.").)

The equal protection clause of the Fourteenth Amendment requires the government to treat all similarly situated people equally.  <u>Shakur</u>, 514 F.3d at 891 (internal citation omitted).  This does not mean, however, that all prisoners must

---

[5] As with Plaintiff's Fourteenth Amendment due process allegations, the Complaint does not explicitly enumerate an equal protection cause of action.  Because Plaintiff has included a statement that Defendant excluded him from the KDP because he is African American, the Court construes the allegations in the Complaint liberally and will address the equal protection allegations as if they were enumerated as a discrete cause of action.  See <u>Hebbe</u>, 627 F.3d at 342 (quoting <u>Erickson</u>, 551 U.S. at 94) (pro se complaints "must be held to less stringent standards than formal pleadings drafted by lawyers").

receive identical treatment and resources. See Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993) (noting that prison administrators do not have an affirmative duty to provide every inmate with access to a spiritual counselor of their choice); Allen v. Toombs, 827 F.2d 563, 568-69 (9th Cir. 1987) (same).  A plaintiff alleging denial of equal protection based on race "must allege facts plausibly showing that [a defendant] acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." Hartmann v. Cal. Dep't of Corr. & Rehab, 707 F.3d 1114, 1122 (9th Cir. 2013) (internal quotations and citations omitted); see also City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 194 (2003) (quoting Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 265 (1977)) ("'[P]roof of racially discriminatory intent or purpose is required' to show a violation of [the equal protection clause]."); Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir. 1998).

   Even allowing for liberal construction, Plaintiff's allegations that Defendant blocked his participation in the KDP because of his race fail to state an equal protection claim.  Although Plaintiff has alleged that he is African American, the Complaint does not present any facts showing that Plaintiff's exclusion from the KDP was the result of intentional racial discrimination.  See, e.g., Holmes v. Baca, No. 3:17-cv-00320-RCJ-WGC, 2018 WL 5815544, at *3 (D. Nev. Nov. 6, 2018) (concluding that the plaintiff had stated an equal protection claim against a defendant who "generally treat[ed] inmates differently in several contexts . . . based on race" while dismissing claims against other defendants where the allegations did not indicate a racially discriminatory motive); Richardson v. Pletting, No. 5:18-cv-0961-CJC-KES, 2018 WL 6314198, at *9 (C.D. Cal. July 30, 2018) (distinguishing between allegations against correctional officers who made statements suggesting intent to discriminate based on race and "speculative assertions" that other prison officials discriminated against the plaintiff based on race).  Nor do the facts alleged give rise to a reasonable inference of discriminatory intent.  The documents attached to the Complaint indicate that prison officials, including Defendant, evaluated Plaintiff's requests at each level of administrative review, but denied the

request because of a previous KDP violation that mandated Plaintiff's exclusion from the program for six months.  Rather than showing discriminatory intent, the Complaint's attachments suggest a logical denial of Plaintiff's requests to receive KDP meals.

Mere conclusory statements that Defendant discriminated against Plaintiff based on his race are not sufficient to state a claim for equal protection under the Fourteenth Amendment.  See Iqbal, 556 U.S. at 678 (citations omitted).  The Court therefore **RECOMMENDS** that the equal protection claims be **DISMISSED** with leave to amend.

### E.  CONCLUSION AND RECOMMENDATION

Because the Complaint fails to state a cognizable claim, the Court need not consider the parties' qualified immunity arguments.  For the reasons stated above, the Court **RECOMMENDS** that Defendant's Motion to Dismiss [ECF No. 8] be **GRANTED** and that Plaintiff's Complaint be **DISMISSED** in its entirety with leave to amend.

**IT IS ORDERED** that no later than **August 24, 2020**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objection to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 7, 2020**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  August 10, 2020

Honorable Michael S. Berg
United States Magistrate Judge

19
19cv2216-JAH-MSB